# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

| | |
|---|---|
| SHELLEY A.H. MOORHEAD, COLLISTER M. FAHIE, AND LORELEI MONSANTO,<br><br>    Plaintiffs,<br><br>    v.<br><br>CAROLINE F. FAWKES, in her official capacity as Supervisor of Elections of the Virgin Islands; BOARD OF ELECTIONS OF THE VIRGIN ISLANDS; THE DEMOCRATIC PARTY OF THE VIRGIN ISLANDS; THE DEMOCRATIC PARTY OF THE U.S. VIRGIN ISLANDS; DPVI; and CAROL BURKE, in her representative capacity as Chairwoman,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. _1:26-CV-000014_ |

**JURY TRIAL DEMANDED**

## RELATED CASE DISCLOSURE

*Plaintiffs disclose the existence of related litigation involving overlapping parties and election-cycle events, including:*

- *Moorhead et al. v. Fawkes et al., Case No. 1:26-cv-00006;*

- *Moorhead et al. v. Fawkes et al., Case No. 1:26-cv-00011;*

- *Democratic Party of the Virgin Islands v. Election System of the Virgin Islands et al., Case No. 1:26-cv-00008; and*

• *Ida Smith et al. v. Caroline F. Fawkes, Case No. 1:24-cv-03398-AHA (D.D.C.), involving overlapping parties and allegations concerning election administration during the 2024 Virgin Islands election cycle.*

*This action presents distinct claims concerning organizational legitimacy, statutory qualification, ultra vires delegation, unequal ballot-access burdens, inactive-voter exclusion, and governmental operationalization of private certification authority under Title 18 of the Virgin Islands Code.*

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

### INTRODUCTION

1. This action seeks declaratory, injunctive, and other appropriate relief concerning the administration of public elections under Title 18 of the Virgin Islands Code and the Constitution of the United States.

2. Plaintiffs challenge the continued governmental recognition and operational use of entities alternatively styling themselves as the "Democratic Party of the Virgin Islands," the "Democratic Party of the U.S. Virgin Islands," and "DPVI," where unresolved questions exist concerning legal continuity, statutory qualification, and authority to exercise ballot-access and candidate-certification functions within publicly administered territorial elections.

3. Plaintiffs do not ask this Court to decide which faction, officer, committee, or national-party affiliate is the "true" Democratic Party for internal political purposes. Plaintiffs ask only whether territorial election officials may administer public ballot-access consequences

through entities whose statutory authority, legal continuity, and public-election predicates have not been formally established under Virgin Islands election law.

4.  Plaintiffs further seek prospective relief concerning whether election officials acted beyond lawful authority by operationalizing and enforcing election procedures through entities whose legal status, continuity, and statutory qualification remain unresolved within contemporaneous governmental records and administrative systems.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

6.  This Court has jurisdiction pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

7.  This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.  This Court possesses supplemental jurisdiction over related territorial-law questions pursuant to 28 U.S.C. § 1367.

9.  Venue is proper in the District of the Virgin Islands because the acts and omissions complained of occurred within the Territory of the Virgin Islands.

10. Federal courts sitting within the Virgin Islands have previously exercised jurisdiction over disputes concerning political-party recognition and election administration under Virgin Islands law. See Alexander ex rel. Democratic Party of the Virgin Islands v. Todman, 337 F.2d 692 (3d Cir. 1964).

## STATUTORY AND LEGAL FRAMEWORK

11.    Title 18 assigns core public-election duties to the Supervisor of Elections. Under 18 V.I.C. § 4, the Supervisor is responsible for certifying candidate names to the boards of elections and receiving and determining the sufficiency of nomination petitions, certificates, and papers.

12.    Under 18 V.I.C. § 411, the Supervisor must examine nomination petitions, papers, and certificates and determine whether candidates have been validly nominated. Section 411 further provides that if the Supervisor determines a candidate does not meet legal qualifications, the Supervisor shall disqualify the candidate.

13.    Title 18 historically included provisions governing political-party recognition, party organization, and party-selection procedures, including 18 V.I.C. §§ 232, 301, 303, 304, 305, 306, 307, 342, and 348.

14.    In Republican National Committee v. Virgin Islands Board of Elections, Case No. 3:22-cv-00049, the District Court entered judgment declaring the following Title 18 provisions unconstitutional: 18 V.I.C. § 301(a) in its entirety; 18 V.I.C. §§ 303(a)–(c); the first sentence of 18 V.I.C. § 304(a); 18 V.I.C. § 305; 18 V.I.C. § 306(a); 18 V.I.C. § 307; 18 V.I.C. § 342; and the second sentence of 18 V.I.C. § 232. The Court additionally found 18 V.I.C. §§ 301(c)–(d) preempted by the Lanham Act to the extent those provisions allow a Virgin Islands political party to use its national affiliate's trademarked symbols without the trademark owner's approval. Republican Nat'l Comm. v. Virgin Islands Bd. of Elections, Case No. 3:22-cv-00049 (D.V.I. Jan. 10, 2024) (ECF No. 75).

14a.    The only provisions of Title 18 relevant to party candidate processes that survived the RNC judgment are the ministerial filing requirement in the last sentence of 18 V.I.C. §

304(a) — requiring a local party to file a certified copy of its own rules with the Supervisor — and the first sentence of 18 V.I.C. § 232, which establishes the primary election date. No surviving provision of Title 18 authorizes ESVI or BOE to condition public ballot access upon the approval or certification determination of a private party organization. The settlement framework enforced through the May 4, 2026 ESVI notice purports to impose a ballot-access framework not expressly authorized by any surviving provision of Title 18.

15. That judgment limits governmental control over internal party governance. It does not itself confer authority upon a private party organization to exercise governmental candidate-certification functions or to impose public ballot-access consequences outside Title 18. The constitutional protections recognized in RNC concern internal party governance and associational autonomy, not governmental enforcement of private certification determinations as conditions of public ballot access. Plaintiffs further allege that DPVI's own 2026 Candidate Filing Packet mischaracterizes the RNC judgment as affirmative legal authority for the proposition that DPVI certification authority "may not be overridden or substituted by a government agency," inverting Molloy's holding — which protected parties from governmental interference in internal governance — to instead insulate private certification of public-office candidates from any governmental review. See Exhibit V, p. 17.

16. The remaining public-election duties assigned to the Supervisor, including the duties reflected in 18 V.I.C. §§ 4 and 411, remain governmental functions unless lawfully altered by statute or court order.

17.   Prior to the judgment entered in Republican Nat'l Comm. v. Virgin Islands Bd. of Elections, Case No. 3:22-cv-00049 (D.V.I. Jan. 10, 2024), 18 V.I.C. § 301(a) provided that recognition as a political party required satisfaction of statutory recognition predicates, including status as the officially recognized affiliate of a major national political party or satisfaction of territorial electoral thresholds established by statute. Section 301(a) was declared unconstitutional in its entirety by that judgment and is no longer operative.

17a.  Plaintiffs plead this historical predicate as contextual background bearing upon unresolved organizational-legitimacy and statutory-standing questions concerning entities identified as "DPVI," and upon whether election officials formally adjudicated any surviving operational predicates before operationalizing ballot-access authority through those entities.

18.   Plaintiffs further allege that surviving provisions of Title 18 — including 18 V.I.C. §§ 4 and 411, which assign nondelegable candidate-qualification duties to the Supervisor of Elections, and 18 V.I.C. § 304(a) (last sentence), which requires filing of certified party rules — continue to require election officials to determine whether entities seeking to participate in publicly administered primaries satisfy remaining statutory filing and qualification requirements applicable to territorial election administration. No invalidated provision is invoked or relied upon for this allegation.

19.   Under the surviving portion of 18 V.I.C. § 304(a) — specifically, the last sentence, which the RNC judgment left intact — recognized political parties are required to file with the Supervisor of Elections a certified copy of their organizational rules. This ministerial filing requirement is the only surviving provision of § 304. The remainder of § 304(a), including

the first sentence governing the timing and location of the territorial committee's organizational meeting, was declared unconstitutional in the RNC judgment.

20.    Under 18 V.I.C. § 381(b), an Independent candidate for Delegate to the United States House of Representatives must submit nomination papers signed by at least one hundred qualified electors from each of at least two election districts, for a minimum total of two hundred signatures.

21.    Under 18 V.I.C. § 110, voters classified as inactive remain eligible to vote upon satisfying statutory requirements. Plaintiffs allege that ESVI's categorical exclusion of inactive-voter signatures from nomination petitions, while recognizing those same voters as eligible to cast ballots, creates an internally inconsistent ballot-access burden.

22.    Title 18, Chapter 29, including 18 V.I.C. §§ 902–905 and 909–910, establishes organizational, reporting, and administrative obligations for qualifying political committees. Plaintiffs do not seek in this action to litigate the full Chapter 29 claims pending or raised elsewhere; Plaintiffs plead Chapter 29 here as additional evidence that unresolved statutory compliance questions bear directly on whether election officials may operationalize public ballot-access consequences through the challenged entities.

23.    Title 13 of the Virgin Islands Code governs the formation, continuation, registration, assumed names, organizational filings, and legal capacity of corporations and associations operating within the Virgin Islands. Plaintiffs plead Title 13 not as an independent corporate-dissolution claim, but as additional statutory context bearing upon whether entities operationally identified as "DPVI," "Democratic Party of the Virgin Islands," and "Democratic Party of the U.S. Virgin Islands" possess formally established organizational

continuity and legal authority sufficient for election officials to operationalize public ballot-access consequences through those entities under Title 18.

24. This action concerns the boundary between protected internal party governance and governmental enforcement of public ballot-access consequences. Even assuming DPVI possesses internal associational authority protected by the First Amendment, ESVI and BOE cannot operationalize private party certification decisions as conditions of public ballot access without lawful statutory authorization under surviving provisions of Title 18. The Court is not asked to adjudicate internal party leadership, ideology, or associational preference, but only the lawful scope of governmental election administration under surviving provisions of Title 18.

25. ESVI's enforcement of DPVI's private certification decisions as conditions of public ballot access constitutes state action under color of territorial law subject to constitutional scrutiny under Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), Anderson v. Celebrezze, 460 U.S. 780 (1983), and Burdick v. Takushi, 504 U.S. 428 (1992).

## PARTIES

26. Plaintiff Shelley A.H. Moorhead is a resident and registered voter of the Virgin Islands and a declared candidate for Delegate to the United States House of Representatives during the 2026 election cycle. ESVI records confirm that Moorhead obtained nomination papers on April 14, 2026 as an Independent candidate for that office. As an Independent candidate, Moorhead is subject to 18 V.I.C. § 381(b), which requires an Independent candidate for Delegate to Congress to submit nomination papers signed by at least one hundred qualified electors from each of at least two election districts, for a minimum total of two hundred

signatures. Moorhead is also subject to ESVI's Clarification and Enforcement Notice excluding signatures from voters classified as "inactive," although such voters remain eligible to cast ballots under 18 V.I.C. § 110. These requirements impose direct, concrete, and imminent ballot-access burdens on Moorhead. Moorhead also serves as the comparator class for the unequal administration of ballot-access procedures challenged herein because Independent candidates proceed through statutory nomination procedures administered by ESVI, while Democratic aspirants are subjected to an additional private certification process enforced through governmental eligibility consequences.

27.    Plaintiff Collister M. Fahie is a resident and registered voter of the Virgin Islands and a declared Republican candidate for the Legislature of the Virgin Islands during the 2026 election cycle.

28.    Plaintiff Lorelei Monsanto is a resident and registered voter of the Virgin Islands and a declared Democratic candidate for the Legislature of the Virgin Islands during the 2026 election cycle. The challenged framework places Plaintiff Monsanto's ballot access under the control of a private certification process enforced through governmental authority and lacking publicly ascertainable statutory standards, constituting a direct, concrete, and imminent injury to her right of ballot access traceable to Defendants' conduct and redressable by this Court.

29.    Defendant Caroline F. Fawkes is the Supervisor of Elections and is sued in her official capacity.

30.    Defendant Board of Elections of the Virgin Islands is the governmental entity charged with election administration under Title 18.

30a.    Plaintiffs are informed and believe, based on publicly available reporting, that Defendant Board Chairman Raymond A. Williams simultaneously serves as Director of the Virgin Islands Lottery, a government agency, a position he has held since 2019. Plaintiffs further allege that a 2023 amendment to Virgin Islands election law bars government officials as defined under 3 V.I.C. § 541 — including directors of government agencies — from serving as members of the Board of Elections. Plaintiffs further allege that DPVI's own 2026 Territorial Committee Endorsement Contact List identifies Williams as an active DPVI Territorial Committee member using his VI Lottery government email address as his designated contact for DPVI purposes, while he simultaneously serves as Chairman of the defendant Board of Elections. Plaintiffs plead this predicate as additional evidence bearing upon the institutional authority, lawful composition, and impartiality of the Board during the period when the challenged framework was adopted and enforced, without prejudice to any quo warranto proceeding or other remedy available under Virgin Islands law. See Exhibits Y, Z.

31.    Defendants identified publicly and operationally as the "Democratic Party of the Virgin Islands," the "Democratic Party of the U.S. Virgin Islands," and "DPVI" are joined as necessary parties pursuant to Fed. R. Civ. P. 19 because Plaintiffs challenge the governmental operationalization of ballot-access and candidate-certification authority through those entities.

32.    Defendant Carol Burke is the Chairwoman of DPVI and is sued in her representative capacity as Chairwoman only.

## FACTUAL ALLEGATIONS

### Organizational Status and Unresolved Statutory Qualification

33. Defendants have operationalized candidate-certification and ballot-access procedures through entities identified interchangeably as the "Democratic Party of the Virgin Islands," the "Democratic Party of the U.S. Virgin Islands," and "DPVI."

34. The named plaintiff in Case No. 1:26-cv-00008, captioned "Democratic Party of the Virgin Islands," was treated by all governmental parties and the Court as a cognizable litigant. That case was voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) on April 27, 2026, and the dismissal was acknowledged by Order of Chief Judge Molloy dated April 29, 2026 (ECF No. 60). No court adjudicated the organizational continuity, statutory qualification, or legal succession of that entity under Titles 13 or 18 on the merits. The proposed intervenors in that proceeding who sought to raise organizational standing questions were expressly precluded from doing so on procedural grounds specific to intervenor status in that case.

35. Plaintiffs in this action are independent plaintiffs, not intervenors, and bring these organizational predicate questions as original claimants. Plaintiffs allege that the same unresolved organizational predicates that were not litigated in Case No. 1:26-cv-00008 continue to bear directly on the lawfulness of governmental operationalization of ballot-access authority through those entities.

36. Public records reflect inconsistent organizational nomenclature, varying assertions of continuity and authority, and differing descriptions of organizational status.

37.    Records maintained by the Federal Election Commission identify a committee titled "Democratic Party of the US Virgin Islands" with FEC ID C00908343 designated as "PARTY – NONQUALIFIED – UNAUTHORIZED," reflecting a registration date of June 16, 2025 and a federal designation different from a recognized national-party committee designation.

37a.    Plaintiffs further allege that DPVI's 2026 Candidate Filing Packet directs candidates seeking access to the public Democratic primary ballot to submit non-refundable filing deposits — ranging from $100 to $500 depending upon office sought — via ActBlue under the entity name "Democratic Party of the U.S. Virgin Islands" and via Zelle to the address treasurerusvidems@gmail.com. Plaintiffs allege that the FEC has designated the committee registered under the name "Democratic Party of the US Virgin Islands," FEC ID C00908343, as "PARTY – NONQUALIFIED – UNAUTHORIZED." The collection of public-office candidate filing fees under an entity name carrying a federal nonqualified designation is additional evidence bearing upon whether the organizational predicates of entities identified as DPVI have been formally established in governmental records. See Exhibits B, V, Z.

38.    Plaintiffs are informed and believe that no judicial determination has established that the presently operating entity is the lawful successor to the historical corporate entity incorporated in 1963.

39.    Plaintiffs are informed and believe that no statement of organization establishing the presently operating entity's authority and qualification under Title 18 has been formally adjudicated or publicly verified through Board of Elections procedures.

40.    Plaintiffs are informed and believe that contemporaneous governmental records maintained through the Office of the Lieutenant Governor, Division of Corporations and Trademarks, reflect unresolved or nonuniform organizational records, trade-name activity, and continuity questions concerning entities identified as "DPVI," "Democratic Party of the Virgin Islands," and "Democratic Party of the U.S. Virgin Islands." Plaintiffs further allege that no formal adjudicative determination establishing continuous organizational identity under applicable provisions of Titles 13 and 18 has been publicly identified prior to the challenged operationalization of ballot-access authority. Plaintiffs do not seek adjudication of internal party leadership disputes, but only whether governmental election officials may operationalize public ballot-access consequences through entities whose organizational predicates remain unresolved in governmental records.

41.    In written correspondence responding to public records requests submitted by Plaintiff Moorhead, Defendant Fawkes acknowledged that the Elections System maintains none of the requested campaign disclosure documents and that no political party has filed campaign disclosure reports with her office for more than twenty years. The response identified no compliance review, enforcement directive, deficiency notice, referral, or corrective action undertaken pursuant to 18 V.I.C. §§ 903–905 and 909–910 in connection with territorial political parties for the 2024 election cycle. Plaintiffs plead this as evidence of unresolved statutory administration and not as a standalone Chapter 29 claim in this action.

### AG Opinions and Settlement Framework

42.    On February 27, 2026, the Virgin Islands Attorney General issued a formal legal opinion concerning the role of Defendants in the nomination process.

43. On April 17, 2026, six days before the April 23, 2026 settlement was executed, the Attorney General issued a further opinion to the Board of Elections reaffirming the distinction between internal party governance and the statutory determination of candidates for public office.

44. Plaintiffs allege that these opinions placed Defendants on notice that public-office candidate qualification remains governed by Virgin Islands law and may not be altered through a private party-controlled certification process absent statutory authority.

45. Under the April 23, 2026 settlement framework, ESVI provides DPVI with a list of candidates who returned nomination packages by May 19, 2026; ESVI notifies DPVI of statutorily qualified candidates by May 25, 2026; and DPVI submits its certified list to ESVI by May 27, 2026.

45a. Plaintiffs allege that DPVI's 2026 Candidate Filing Packet, circulated on or about May 5, 2026 under the authority of Defendant Burke as Chairwoman, requires Democratic candidates for public office to: (a) submit private endorsements from DPVI Territorial Committee members as a threshold certification condition; (b) pay non-refundable filing deposits to DPVI ranging from $100 to $500 depending on office; (c) sign a Loyalty Pledge affirming DPVI's authority as a condition of ballot access; and (d) submit any certification dispute exclusively to a private DPVI Judicial Council. The packet expressly states that ESVI "has no authority to adjudicate or intervene in DPVI certification matters." These requirements constitute the operational content of the private certification layer that ESVI is enforcing through the May 4, 2026 notice. The filing packet additionally includes a DPVI Affidavit of Candidacy Form and a Welcoming Statement directed at prospective 2026 Democratic candidates, both of which form part of the documentary

apparatus through which DPVI's private certification requirements are presented to candidates seeking access to the public primary ballot. See Exhibits V, W, X.

46.    Plaintiffs allege that only candidates satisfying both ESVI's statutory qualification process and DPVI's private certification process may appear on the Democratic primary ballot under that framework, and that the framework purports to apply to future Virgin Islands election cycles.

47.    Plaintiffs allege that the prospective and continuing nature of the challenged framework creates an ongoing and recurring ballot-access controversy not limited to a single election cycle. The voluntary dismissal of Case No. 1:26-cv-00008 on April 27, 2026 removed the settlement agreement from any judicial supervision. The framework now operates as a purely private instrument enforced exclusively through governmental machinery, without any authorizing court order. Absent judicial intervention, the challenged framework is capable of repetition yet evading review because the certification process operates on compressed election-cycle deadlines while purporting to govern future cycles indefinitely.

### Prior Election-Cycle Conduct

48.    The challenged conduct does not represent an isolated administrative decision. In the 2024 Virgin Islands election cycle, Defendant Fawkes similarly imposed candidacy qualifications beyond those authorized by statute, used official communications to publicly declare disqualifications before any lawful adjudication, and filed suit in her official capacity against Board members who exercised their statutory authority in a manner she opposed. See Ida Smith et al. v. Caroline F. Fawkes, Case No. 1:24-cv-03398-AHA (D.D.C., filed Dec. 5, 2024; See Exhibit BB). Plaintiff Fahie participated in that prior proceeding as both a candidate and registered voter who documented violations of his

electoral rights. The pattern of ultra vires administrative conduct predating the 2026 certification framework is probative of deliberate and continuing constitutional injury."

### Continuing Demands and Nonresponse

49. Plaintiffs have submitted formal documented demands to Defendants seeking clarification, records, and statutory predicates.

50. Plaintiff Moorhead submitted:

(a) a corrected public records request on January 28, 2026;

(b) a written demand for production of statutory recognition and financial compliance records on February 12, 2026; and

(c) a formal statutory enforcement demand and notice on February 20, 2026.

51. Plaintiff Fahie submitted a formal notarized HAVA complaint on July 11, 2025 demanding a hearing within thirty days.

52. As of the date of this filing, Plaintiffs are informed and believe that these demands have not produced a written determination, formal resolution, or administrative action sufficient to resolve the statutory predicates at issue.

53. Plaintiff Fahie also submitted a March 2, 2026 public records request seeking records concerning the Republican Party of the Virgin Islands' 2024 campaign finance reporting.

54. Plaintiffs are informed and believe that no 2024 campaign finance report for the Republican Party was identified in records produced in response.

55. Plaintiff Fahie has standing to challenge ESVI's Clarification and Enforcement Notice excluding inactive-voter signatures from nomination petitions because that policy applies to candidates regardless of party affiliation and directly affects the nomination process

through which Fahie must proceed. That injury is concrete, traceable to ESVI's administrative conduct, and redressable by this Court.

56. Plaintiff Fahie additionally has standing to challenge the unequal administration of ballot access because he is a candidate seeking access to the same publicly administered election system alleged to be operating under materially different standards across candidate classes. Plaintiff Fahie previously documented election administration irregularities by Defendant Fawkes in the 2024 election cycle, including denial of paper ballot rights and unauthorized interference with candidate qualification procedures. See 1:24-cv-03398-AHA (See Exhibit BB), Affidavit of Collister Fahie (Document 1-1, pp. 22–24). That prior documented injury corroborates the concrete and non-speculative nature of the continuing harm Fahie faces in the 2026 cycle.

57. Plaintiff Fahie further proceeds under the Republican banner while unresolved party-recognition, trade-name, and statutory-compliance questions remain pending concerning entities identified with the Republican Party framework, creating additional uncertainty in the electoral framework directly affecting his candidacy.

## COUNT I

## 42 U.S.C. § 1983 — CIVIL RIGHTS

58. Plaintiffs reallege and incorporate all preceding paragraphs.

59. Defendants acted under color of territorial law.

60. The May 4, 2026 ESVI notice operationalized private party certification as a governmental ballot-access condition without statutory authorization. The May 4, 2026 ESVI notice was transmitted by ESVI's Deputy Supervisor using official government communications

infrastructure, with Defendant Fawkes copied in her official capacity, to Democratic aspirants, and cited a "DPVI Plan submitted to the Elections System of the Virgin Islands on January 24, 2026" as the authority for the certification requirement — a plan whose submission preceded both the April 17, 2026 Attorney General opinion and the April 23, 2026 settlement agreement, and whose enforcement as a ballot-access condition lacks authorization under any surviving provision of Title 18 or any court order then in effect. That January 24, 2026 plan is identified herein as Exhibit K. See Exhibits H, K, AA.

61.  Defendants' conduct included the governmental enforcement of private certification determinations, unequal administration of ballot-access requirements, and operationalization of candidate-qualification procedures beyond authority conferred by surviving provisions of Title 18.

62.  The constitutional violation did not occur at the moment a private party executed the April 23, 2026 settlement agreement. The constitutional violation occurred when governmental Defendants converted that private agreement into an official governmental notice conditioning public ballot access upon compliance with DPVI's internal certification process.

63.  Plaintiffs allege that no surviving provision of Title 18 authorizes governmental enforcement of that framework and that no court in Case No. 1:26-cv-00008 issued any order authorizing or supervising its implementation.

64.  Defendants thereby deprived Plaintiffs of rights secured by the First and Fourteenth Amendments.

## COUNT II

## DECLARATORY JUDGMENT

65.    Plaintiffs reallege and incorporate all preceding paragraphs.

66.    An actual and justiciable controversy exists concerning whether Defendants may lawfully administer public ballot-access consequences through the challenged entities absent formal determination of statutory qualification and legal continuity.

67.    Plaintiffs seek declarations concerning:

(a)    the legal effect of the invalidation of former 18 V.I.C. § 301(a) upon governmental operationalization of political-party certification authority under surviving provisions of Title 18;

(b)    surviving duties under §§ 4 and 411;

(c)    validity of the settlement framework;

(d)    lawfulness of the May 4 notice;

(e)    unresolved organizational continuity;

(f)    applicability of Chapter 29 obligations; and

(g)    preservation of relevant governmental records.

## COUNT III

## ULTRA VIRES ADMINISTRATIVE ACTION

68.    Plaintiffs reallege and incorporate all preceding paragraphs.

69.    The doctrine of ultra vires prohibits governmental officials from exercising authority beyond that conferred by statute.

70.    Sections 4 and 411 assign nondelegable candidate qualification duties to the Supervisor for publicly administered elections.

71.    No surviving provision of Title 18 authorizes ESVI or BOE to condition ballot access upon approval by a private organization.

72.    The April 23, 2026 settlement framework cannot independently expand the statutory authority of election officials beyond powers conferred by Title 18. The voluntary dismissal of Case No. 1:26-cv-00008 on April 27, 2026 removed that framework from any judicial supervision whatsoever. No court order authorized, ratified, or continues to supervise the framework being enforced through ESVI's governmental machinery.

73.    The challenged framework therefore exceeds lawful statutory authority.

74.    The ultra vires character of the challenged framework is further evidenced by Defendant Fawkes' documented history in the 2024 election cycle of imposing statutory qualifications beyond those authorized under Title 18 and federal law. See related case 1:24-cv-03398-AHA (Exhibit BB). A pattern of exceeding statutory authority across consecutive election cycles is relevant to the willful nature of the deprivation and the necessity of prospective injunctive relief.

## COUNT IV

## PROCEDURAL DUE PROCESS

75.    Plaintiffs reallege and incorporate all preceding paragraphs.

76.    Plaintiffs possess constitutionally protected liberty interests in ballot access.

77.    The challenged framework imposes private certification burdens without publicly ascertainable governmental standards, meaningful review procedures, or lawful statutory

basis. As this Court recognized in striking the second sentence of 18 V.I.C. § 232 in Republican Nat'l Comm. v. Virgin Islands Bd. of Elections, Case No. 3:22-cv-00049 (D.V.I. Jan. 10, 2024) (ECF No. 75), the complete absence of any mechanism for a party or candidate to seek redress following a denial of certification violates the Due Process Clause. The settlement framework operationalized through the May 4, 2026 ESVI notice replicates this constitutional defect: DPVI's certification determinations are subject to no publicly ascertainable standard, no administrative appeal, and no governmental review, yet carry the force of a governmental ballot-access exclusion. DPVI's own 2026 Candidate Filing Packet confirms this defect on its face, expressly vesting exclusive jurisdiction over certification disputes in a private DPVI Judicial Council and declaring that ESVI has no authority to adjudicate or intervene in those determinations. See Exhibit V, p. 16.

78. The framework therefore violates procedural due process under the Fourteenth Amendment.

## COUNT V

## EQUAL PROTECTION — DIFFERENTIAL GOVERNMENTAL OPERATIONALIZATION OF BALLOT ACCESS

79. Plaintiffs reallege and incorporate all preceding paragraphs.

80. Democratic aspirants are subjected to additional private certification burdens enforced through governmental ballot-access consequences.

81. Independent candidates proceed through publicly administered statutory procedures without any equivalent private certification requirement.

82. Plaintiffs allege that Defendants administer materially different ballot-access frameworks for similarly situated candidates seeking access to the same publicly administered election ballot, including differential use of private certification requirements, nomination mechanisms, and administrative review structures. Plaintiffs allege that candidates seeking access to the same election ballot are similarly situated for purposes of constitutional ballot-access protections.

83. The resulting unequal administration lacks rational basis rooted in surviving provisions of Title 18 and is not justified by any lawful distinction between candidate classes in publicly administered elections.

84. The framework therefore violates the Equal Protection Clause of the Fourteenth Amendment.

## COUNT VI

## FIRST AND FOURTEENTH AMENDMENTS — UNEQUAL BALLOT ACCESS ANDERSON–BURDICK FRAMEWORK PLAINTIFF MOORHEAD AGAINST DEFENDANTS FAWKES AND BOE

85. Plaintiff Moorhead realleges and incorporates all preceding paragraphs.

86. Under 18 V.I.C. § 381(b), Plaintiff Moorhead, as an Independent candidate for Delegate to Congress, must obtain at least two hundred qualifying nomination signatures drawn from at least two election districts.

87. ESVI's enforcement policy further excludes signatures from voters classified as inactive, requiring Plaintiff Moorhead to over-collect signatures to account for anticipated administrative rejection of otherwise eligible electors.

88. Party-affiliated candidates seeking access to the same election ballot are not subjected to the same combination of statutory signature burden, inactive-voter exclusion, and verification-intensive petition risk.

89. The resulting burden on Plaintiff Moorhead's ballot access is severe when considered in practical operation, including the absence of party infrastructure, organized party voter rolls, and equivalent internal nomination mechanisms.

90. Under Anderson v. Celebrezze, Burdick v. Takushi, Bullock v. Carter, and related ballot-access precedent, Defendants' unequal and burdensome administration of ballot access violates the First and Fourteenth Amendments, as applied to Plaintiff Moorhead.

## COUNT VII

## FIRST AND FOURTEENTH AMENDMENTS — INACTIVE-VOTER SIGNATURE EXCLUSION

91. Plaintiffs reallege and incorporate all preceding paragraphs.

92. ESVI's Clarification and Enforcement Notice states that signatures from voters classified as inactive will be rejected during nomination petition review.

93. Under 18 V.I.C. § 110, voters classified as inactive remain eligible to cast ballots upon satisfying statutory requirements.

94. Plaintiffs allege that Defendants' policy treats the same voters as eligible to participate in the election as voters but ineligible to support access to that same election through nomination petitions.

95. This internally inconsistent treatment inflates candidate signature burdens, reduces the pool of usable petition signers, and creates a ballot-access restriction that is not adequately justified by any corresponding statutory exclusion from voting.

96. The inactive-voter signature exclusion violates the First and Fourteenth Amendments as applied to candidates seeking access to the 2026 ballot.

## IRREPARABLE HARM AND BASIS FOR EMERGENCY RELIEF

97. Plaintiffs allege that deprivation of constitutional ballot-access rights during an ongoing election cycle constitutes irreparable harm for which there exists no adequate remedy at law. Once the May 27, 2026 DPVI certification deadline passes without judicial intervention, Plaintiffs' opportunity to appear on the 2026 primary ballot will be permanently foreclosed. That foreclosure is not remediable by monetary damages or post-election relief.

98. Plaintiffs are likely to succeed on the merits of their claims. The Attorney General's own opinions of February 27 and April 17, 2026 confirm that public-office candidate qualification is governed exclusively by Virgin Islands statute and may not be altered through private party certification absent statutory authorization. The April 23, 2026 settlement framework operationalizes procedures beyond those identified in that established legal framework and beyond the authority conferred by surviving provisions of Title 18. The May 4, 2026 ESVI notice enforcing that framework as a governmental ballot-access condition lacks any surviving statutory basis under Title 18.

99. The balance of equities favors Plaintiffs. Governmental Defendants suffer no cognizable harm from being required to administer ballot access in conformity with existing statute. Defendants DPVI and Burke retain full authority over internal party governance and party-

officer selection. The only consequence of injunctive relief is that public-office ballot access reverts to the statutory framework that governed every prior election cycle.

100.    The public interest strongly supports relief. The integrity of publicly administered elections depends upon election officials exercising only the authority conferred by statute. Private certification of public-office candidates without statutory authorization undermines voter confidence, creates unequal access to the ballot, and establishes a precedent — expressly extended to all future election cycles by the settlement's own terms and now operating without any judicial supervision following the dismissal of Case No. 1:26-cv-00008 — that no court has sanctioned under Virgin Islands law.

100a.   The public interest in relief is additionally supported by the fact that the constitutional violations alleged here follow a documented pattern from the 2024 election cycle, in which ESVI and Defendant Fawkes similarly engaged in unlawful ballot-access administration. See 1:24-cv-03398-AHA (See Exhibit BB). Absent prospective injunctive relief, the challenged framework — now operating without any judicial supervision following the dismissal of Case No. 1:26-cv-00008 — will continue to burden electoral rights in every future cycle.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(A)    Declare that Defendants acted under color of territorial law in violation of the First and Fourteenth Amendments;

(B)   Declare that the challenged framework exceeds lawful statutory authority under Title 18;

(C)   Issue temporary, preliminary, and permanent injunctive relief enjoining governmental enforcement of the May 4, 2026 notice and any ballot-access framework conditioning public-election access upon private certification procedures lacking surviving statutory authorization under Title 18;

(D)   Declare that the inactive-voter exclusion policy is unconstitutional;

(E)   Declare that the unequal ballot-access burdens imposed upon Independent candidates violate Anderson-Burdick principles;

(F)   Require Defendants to preserve and produce all relevant governmental records, electronically stored information, correspondence, internal memoranda, certification records, communications with DPVI, Attorney General opinions, nomination records, and ballot-access determinations relating to the challenged framework;

(G)   Award attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

(H)   Grant such other relief as the Court deems just and proper.

MOORHEAD ET AL. v. FAWKES ET AL.

VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

## VERIFICATION

We declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 11th day of May, 2026.

Respectfully submitted,

**Shelley A.H. Moorhead**

Plaintiff, Pro Se | P.O. Box 8027 | Christiansted, VI 00823

Telephone: (340) 277-8146 | Email: shelley.moorhead@gmail.com

_____

**Collister M. Fahie**

Plaintiff, Pro Se | 303 Hospital Ground, 411 Hillside Village Condos | St. Thomas, VI 00802

Telephone: (954) 980-6041 | Email: collisterfahie@hotmail.com

_____

**Lorelei Monsanto**

Plaintiff, Pro Se | 8a-1 Estate Carolina | St. John, VI 00830

Telephone: (340) 725-7069 | Email: loreleivi@gmail.com

_____

**EXHIBIT INDEX**

| Exhibit | Description |
|---------|-------------|
| A | Democratic National Committee Recognition Letter |
| B | Federal Election Commission Registration Record – C00908343 |
| C | Lieutenant Governor Corporate Records Concerning Historical 1963 DPVI Entity |
| D | February 12, 2026 ESVI Response Letter |
| E | April 23, 2026 Mediated Settlement Agreement – Case No. 1:26-cv-00008 |
| F | BOE Governance Policies, Rules, and Bylaws |
| G | Proposed Intervenors' Notice and Related Filings – Case No. 1:26-cv-00008 |
| H | May 4, 2026 ESVI Notice to Democratic Aspirants |
| I | 2026 Trade Name Registration Materials, LGO Correspondence, Registry Screenshots, Automated Notifications, and Related Government Processing Records |
| J | January 23, 2026 Testimony of Carol M. Burke Before the 36th Legislature |
| K | DPVI 2026 Primary Election and Certification Plan (submitted to ESVI on or about January 24, 2026, as referenced in May 4, 2026 ESVI Notice to Democratic Aspirants) |
| L | Affidavit of Board Member Harriet A. Mercer |
| M | Letter of Board Member Dr. Cleopatra Peter |
| N | Affidavit of Board Member Barbara LaRonde |

| O | Prior Records Requests and Enforcement Demands Submitted by Plaintiffs |
|---|---|
| P | ESVI Aspirant-Tracking Records Confirming Plaintiffs' 2026 Candidacies |
| Q | Fawkes / ESVI Correspondence Regarding Absence of Party Campaign Disclosure Records |
| R | February 27, 2026 Attorney General Opinion |
| S | April 17, 2026 Attorney General Opinion |
| T | ESVI Clarification and Enforcement Notice Regarding Inactive-Voter Signatures |
| U | March 2, 2026 Public Records Request Regarding Republican Party Campaign Finance Records; February 17, 2026 Targeted Notice and Limited Cease and Desist Regarding Administrative Engagement with entity styling itself as "The Republican Party of the Virgin Islands"; March 24, 2026 Records Requests Regarding Republican Party |
| V | DPVI 2026 Candidate Filing Packet (Version 2, circulated May 5, 2026) |
| W | DPVI Affidavit of Candidacy Form — 2026 Primary Election |
| X | DPVI Welcoming Statement to Prospective 2026 Democratic Candidates |
| Y | DPVI Territorial Committee Endorsement Contact List — 2026 |
| Z | DPVI Filing Packet Forwarding Chain (May 11, 2026) |
| AA | ESVI Official Email Transmission of May 4, 2026 Notice (Douglas/Fawkes to Democratic Aspirants, May 5, 2026, forwarded May 11, 2026) |

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

# DIVISION OF ST. CROIX

| | |
|---|---|
| SHELLEY A.H. MOORHEAD, COLLISTER M. FAHIE, AND LORELEI MONSANTO,<br><br>Plaintiffs,<br><br>v.<br><br>CAROLINE F. FAWKES, in her official capacity as Supervisor of Elections of the Virgin Islands; BOARD OF ELECTIONS OF THE VIRGIN ISLANDS; THE DEMOCRATIC PARTY OF THE VIRGIN ISLANDS; THE DEMOCRATIC PARTY OF THE U.S. VIRGIN ISLANDS; DPVI; and CAROL BURKE, in her representative capacity as Chairwoman,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Civil Action No. _____ |

## NOTICE REGARDING INTENDED SERVICE OF PROCESS

Plaintiffs intend to effect service pursuant to Federal Rule of Civil Procedure 4 upon the following persons and entities. This notice identifies intended service recipients and known contact information as of the date of filing. Completion of service pursuant to Rule 4 requires issuance of summons by the Clerk of Court, followed by service by a non-party adult, a United States Marshal, or execution of a waiver of service under Rule 4(d).

Service upon the governmental defendants will additionally be effected through the Attorney General pursuant to applicable federal and territorial law.

This notice does not itself constitute completed service.

**Caroline F. Fawkes**
Supervisor of Elections
Elections System of the Virgin Islands
Sunny Isles Annex, Unit 4 Christiansted,
VI 00821

Email: caroline.fawkes@vi.gov

**Raymond A. Williams**
Chairman
Board of Elections of the Virgin Islands
Sunny Isles Annex, Unit 4 Christiansted,
VI 00821

Email: raywilldpnr@yahoo.com

**The Honorable Gordon Rhea**
Attorney General of the United States Virgin Islands
Department of Justice
34-38 Kronprindsens Gade St.
Thomas, VI 00802

Email: gordon.rhea@doj.vi.gov

**Carol Burke, in her representative capacity**
as Chairwoman
Democratic Party of the Virgin Islands
P.O. Box 303573
St. Thomas, Virgin Islands 00803
Telephone: (340) 998-0525
Website: democratvi.org
Facebook Page: facebook.com/democratsvi

Email: cb_manjack@yahoo.com

**The Democratic Party of the Virgin Islands /**
**Democratic Party of the U.S. Virgin Islands /**
**DPVI**
P.O. Box 303573
St. Thomas, Virgin Islands 00803
Telephone: (340) 998-0525
Website: https://www.democratvi.org

**Submitted:** May 13, 2026

Shelley A. H. Moorhead
Plaintiff Pro Se